IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| JASON EMANUEL SPARKS, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | CIVIL No: 5:14-cv-00221 |
| Doctor CHIQUITA A FYE, *et al.*, | : | |
| | : | |
| | : | PROCEEDINGS UNDER 42 U.S.C. §1983 |
| Defendants | : | BEFORE THE U. S. MAGISTRATE JUDGE |

## REPORT & RECOMMENDATION

On June 13, 2014, Plaintiff Jason Emanuel Sparks filed his original complaint in the above-styled case pursuant to 42 U.S.C. § 1983. In the original complaint, Plaintiff alleged that he was denied medical care following a transfer from Augusta State Medical Prison ("ASMP") to Macon State Prison ("MSP"). Plaintiff claims that he has been denied Neurontin since his transfer—a drug prescribed to him after undergoing surgery at ASMP—and that Defendants Fye, Nash, and Smith were deliberately indifferent to his medical needs. Plaintiff brought suit against the Defendants, seeking both injunctive relief and compensatory and punitive damages.

Defendants Fye and Smith filed a Motion to Dismiss for Failure to State a Claim on August 25, 2014 (Doc. 16), and Defendant Nash filed a Motion to Dismiss for Failure to State a Claim on September 29, 2014 (Doc. 27). Plaintiff responded to Defendants Fye and Smith on September 15, 2014 (Doc. 24), and to Defendant Nash on October 9, 2014 (Doc. 33). Defendants' Motions to Dismiss were denied, such that Plaintiff's denial-of-medical-care claims under the Eighth Amendment proceeded against Defendants Fye, Smith, and Nash. Doc. 49. Discovery commenced.

On August 26, 2015, Defendants filed a Motion for Summary Judgment. Doc. 55. On September 30, 2015, Plaintiff was advised in a notice to respond to Defendants' Motion for Summary Judgment, or his claims could be dismissed. Doc. 57. Plaintiff has not responded and the Motion is ripe for review.

Because Plaintiff fails to demonstrate a genuine issue of material fact, that Defendants are not entitled to summary judgment as a matter of law, or that Defendants are not entitled to qualified immunity, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (Doc. 55) be **GRANTED**, and Plaintiff's case dismissed.

I.  SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support

the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See *id.* (citing *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. *Peek–A–Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla.*, 630 F.3d 1346, 1353 (11th Cir. 2011).

Of particular note in this case, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). Specifically, the court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir.2009) (citation omitted).

II.     FACTS & EVIDENCE PRESENTED

On November 5, 2010, Plaintiff underwent an MRI of the cervical region of the spine following complaints of neck pain. Ex. E, Pl.'s Certified Medical Records, Doc. 55-9, p. 28. Plaintiff felt symptoms of tingling, "like a low current electrical shock that was steadily going down my arm every time I turned my neck a certain way." Pl's Depo, Doc. 55-2, p. 15, 22-25. Plaintiff further states that the cause of his pain was working out, "trying to [bench press] more than what [he] could actually do." Pl's Depo, Doc. 55-2, p. 16, 12-15. Plaintiff was found to have disk herniation at C5-C6. Ex. E, Pl.'s Certified Medical Records, Doc. 55-9, p. 28. On January 26, 2011, Dr. Macomsen at Augusta State Medical Prison successfully performed a C5-C6 anterior cervical discectomy and fusion. Ex. E, Pl.'s Certified Medical Records, Doc. 55-9, p. 27. Plaintiff states that after the surgery, he stayed at Augusta State Medical Prison for a little over a month, and

had two follow up visits with Dr. Macomsen. Pl's Depo, Doc. 55-2, p. 18, 15-25. During these examinations, Plaintiff told Dr. Macomson that he was experiencing something, which the Doctor attributed to nerve damage—a normal side effect of the surgery Plaintiff underwent. Pl's Depo, Doc. 55-2, p. 19, 3-12. However, a radiology report on post-op found that Plaintiff's spine was in normal alignment. Ex. E, Pl.'s Certified Medical Records, Doc. 55-9, p. 26.

On December 13, 2011, Plaintiff was transferred from Telfair State Prison to Ware State Prison, Ex. E, Pl.'s Certified Medical Records, Doc. 55-9, p. 25. On his medication packaging list, Plaintiff was prescribed Neurontin, 900mg. Ex. E, Pl.'s Certified Medical Records, Doc. 55-9, p. 26. On Plaintiff's progress record from Ware State Prison, a note was made that Plaintiff's Neurontin prescription should be refilled, but only for thirty (30) days. Ex. E, Pl.'s Certified Medical Records, Doc. 55-9, p. 23. Plaintiff's prescription was consistently renewed and prescribed as part of Plaintiff's pain management regimen, based on reports by Plaintiff that the Neurontin was the only thing that helped his pain. Ex. E, Pl.'s Certified Medical Records, Doc. 55-9, pp. 4-22.

On December 30, 2013, Plaintiff was transferred to Macon State Prison. Pl's Depo, Doc. 55-2, p. 28, 13-15. He was seen by Defendant Nash the next day. Pl's Depo, Doc. 55-2, p. 28, 23-25; Ex. A to Aff. of Def. Fye, Doc. 55-4, p. 12.. At this meeting, Plaintiff remembers Defendant Nash checking his blood pressure, and temperature, and asked him what medications he was on. Pl's Depo, Doc. 55-2, p. 29, 9-12. Plaintiff requested a renewal of his Neurontin prescription. Ex. A to Aff. of Def. Fye, Doc. 55-4, p. 12. Defendant Nash then told Plaintiff that she could not give him Neurontin because the original prescription was not in his file, but that she would talk with Defendant Fye first. Pl's Depo, Doc. 55-2, p. 29, 12-24. Dr. Fye was the only member of the medical staff at Macon State Prison authorized to prescribe Neurontin. Aff. of Def. Fye, Doc. 55-3,

p. 3.

Dr. Fye reviewed Plaintiff's medical file. Aff. of Def. Fye, Doc. 55-3, p. 3; see also Ex. A to Aff. of Def. Fye, Doc. 55-4 and Ex. E, Doc. 55-9. Although Dr. Fye was able to see Plaintiff's previous prescriptions for Neurontin, she did not find a diagnosis of nerve damage for Plaintiff. Aff. of Def. Fye, Doc. 55-3, p. 3. Dr. Fye's understanding was that Plaintiff's surgery had ended successfully and corrected Plaintiff's original diagnosis. Aff. of Def. Fye, Doc. 55-3, p. 3. Thus, Dr. Fye did not believe there was any clinical indication that Plaintiff's prescribed Neurontin was medically necessary or should have been renewed. Aff. of Def. Fye, Doc. 55-3, p. 3.

Dr. Fye advised Defendant Nash to offer Plaintiff pain medication other than Neurontin. Aff. of Def. Nash, Doc. 55-6, p. 3. Defendant Nash offered to provide Plaintiff with other types of medication and treatment that were just as effective in alleviating pain as Neurontin. Aff. of Def. Nash, Doc. 55-6, p. 3. Plaintiff refused pain medication and treatment, insisting that he only wanted Neurontin. Aff. of Def. Nash, Doc. 55-6, p. 4.

Since Plaintiff's original intake appointment with P.A. Nash on December 31, 2013, Plaintiff was examined eight (8) additional times at Macon State. Aff. of Def. Fye, Doc. 55-3, p. 4; see also Ex. A to Aff. of Def. Fye, Doc. 55-4, pp. 1-11. These records indicate that besides Plaintiff's first examination with P.A. Nash, Plaintiff never complained of nerve pain again.

Plaintiff was transferred to Hays State Prison on March 10, 2015. Pl's Depo, Doc. 55-2, p. 35, 15-17. Plaintiff has not received a prescription for Neurontin at Hays. Pl's Depo, Doc. 55-2, p. 35, 20-22.

III. DISCUSSION

In his complaint and supporting memoranda, Plaintiff alleges that Defendants, in their individual capacity, were deliberately indifferent to his serious medical need. Plaintiff brings his

5

action under Section 1983 of Title 42 of the United States Code, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute creates no protected rights, but instead provides a remedy for a violation of constitutional rights committed under color of state law. There is no debate that Defendants were acting under color of state law during all the events pertinent to this case. Thus, the issue under consideration is whether the Defendants violated Plaintiff's constitutional rights. Even assuming, however, that Defendants violated Plaintiff's constitutional rights, the Defendants may still enjoy the protection of qualified immunity against claims brought against them in their individual capacity. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Courts employ a two-part framework to evaluate qualified immunity claims.[1] In order to deprive the Defendants of qualified immunity, the Plaintiff must demonstrate both that a constitutional violation occurred and that the constitutional right violated was clearly established.[2] *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court may analyze those two questions in whatever order is most appropriate in the case before it. *Pearson v. Callahan*, 555 U.S. 223 (2009). After a thorough review of the record, Defendants are entitled to summary judgment on Plaintiff's

---

[1] There is an often overlooked requirement that precedes that two-part inquiry: whether Defendant was acting within the scope of his discretionary authority. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Here, it is clear that the officers were operating within the scope of their discretionary authority as medical providers at Macon State Prison.

[2] At the summary judgment phase, the Court answers these two questions taking the facts in the light most favorable to the Plaintiff.

6

deliberate indifference claim. The claims are addressed below.

### A. Clearly Established Right: Eight Amendment

Plaintiff has a clearly established right to medical care under the Eighth Amendment. The Eighth Amendment prohibits cruel and unusual punishment, which includes deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). Nonetheless, not every claim of inadequate medical treatment states a cognizable claim under the federal constitution. *Id.* "Medical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir. 1991) (citation omitted).

### B. Legal Standards for Deliberate Indifference to Medical Need

To establish deliberate indifference to his medical needs, a prisoner must satisfy both an objective and a subjective component. *Campbell v. Sikes,* 169 F.3d 1353, 1363 (11th Cir. 1999). Regarding the objective component, a prisoner must show both an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm, and also that the response by the prison official to that need was poor enough to constitute an unnecessary and wanton infliction of pain. *Taylor v. Adams,* 221 F.3d 1254, 1258 (11th Cir. 2000). Regarding the subjective component, a prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence. *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999). Additionally, as with any tort claim, the prisoner must show that an injury was caused by the defendant's wrongful conduct. *See Hale v. Tallapoosa County,* 50 F.3d 1579, 1582 (11th Cir. 1995).

It is not enough to show that the care provided was less than optimal, or that a different course of treatment might have been preferable. The elements required to prove the subjective

7

component of a deliberate indifference claim establish that "mere accidental inadequacy, negligence in diagnosis or treatment, [and] even medical malpractice" are not actionable under 42 U.S.C. § 1983. *Taylor,* 221 F.3d at 1258. A prisoner also cannot establish a violation simply because he "may have desired different modes of treatment" than that which was provided to him. *Hamm v. DeKalb County,* 774 F.2d 1567, 1576 (11th Cir.1985). Such course of treatment claims, by definition, involves the "exercise of professional judgment" and as such is not actionable. *Estelle,* 429 U.S. at 105.

C. Plaintiff's Objective Medical Need

To bring an Eighth Amendment deliberate indifference claim against any of the named Defendants, Plaintiff must show that he suffered from an objectively serious medical need that would pose a substantial risk of serious harm if left unattended. Reviewing the evidence before the Court, Plaintiff has not established the existence of an objectively serious medical condition. The Eleventh Circuit defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010), *quoting Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009).

The evidence reflects that on November 5, 2010, Plaintiff underwent an MRI of the cervical region of the spine following complaints of neck and upper back pain. Ex. E, Pl.'s Certified Medical Records, Doc. 55-9, p. 28. Plaintiff was found to have disk herniation at C5-C6. Ex. E, Pl.'s Certified Medical Records, Doc. 55-9, p. 28. On January 26, 2011, Dr. Macomsen successfully performed a C5-C6 anterior cervical discectomy and fusion. Ex. E, Pl.'s Certified Medical Records, Doc. 55-9, p. 27. A radiology report on post-op found that Plaintiff's spine was in normal alignment. Ex. E, Pl.'s Certified Medical Records, Doc. 55-9, p. 26. On December 13,

2011, Plaintiff was transferred from Telfair State Prison to Ware State Prison, Ex. E, Pl.'s Certified Medical Records, Doc. 55-9, p. 25. On his medication packaging list, Plaintiff was prescribed Neurontin, 900mg, but the reason for this prescription was not recorded. Ex. E, Pl.'s Certified Medical Records, Doc. 55-9, p. 26. On Plaintiff's progress record from Ware State Prison, a note was made that Plaintiff's Neurontin prescription should be refilled, but only for thirty (30) days. Ex. E, Pl.'s Certified Medical Records, Doc. 55-9, p. 23. Plaintiff's prescription was consistently renewed and prescribed as part of Plaintiff's pain management regimen, based on reports by Plaintiff that the Neurontin was the only thing that helped his pain. Ex. E, Pl.'s Certified Medical Records, Doc. 55-9, pp. 4-22.

Upon transfer to Macon State Prison, Dr. Fye reviewed Plaintiff's medical file, which is also before the Court. Aff. of Def. Fye, Doc. 55-3, p. 3; see also Ex. A to Aff. of Def. Fye, Doc. 55-4 and Ex. E, Doc. 55-9. Although Dr. Fye was able to see Plaintiff's previous prescriptions for Neurontin, she did not find a diagnosis of nerve damage for Plaintiff. Aff. of Def. Fye, Doc. 55-3, p. 3. Dr. Fye's understanding of Plaintiff's surgery was that it ended successfully and corrected Plaintiff's original diagnosis. Aff. of Def. Fye, Doc. 55-3, p. 3. Thus, Dr. Fye did not believe there was any clinical indication that Plaintiff's prescribed Neurontin was medically necessary or should have been renewed. Aff. of Def. Fye, Doc. 55-3, p. 3. Dr. Fye also states that in the prison context, medical staff have a tendency to "blindly continue to prescribe medication to inmates without properly evaluating whether such medication is actually needed," which she believes is the situation presented before the court in the instant case. Aff. of Def. Fye, Doc. 55-3, p. 4.

The only evidence Plaintiff presents of an objectively serious medical need is an assertion in his sworn deposition that Dr. Macomsen diagnosed him with nerve damage. Pl's Depo, Doc. 55-2, p. 20, 7-9. In response to Defendants' Motion to Dismiss, Plaintiff did present to the court an

9

uncertified copy of his "Consent for Operation or Invasive Procedure" which warned Plaintiff of possible nerve damage as a side effect of his surgery. Doc. 24-1. However, this warning is not the same as a diagnosis, and Plaintiff does not provide any proof or record of that diagnosis. Further, Plaintiff does not challenge the medical evidence presented by the Defendants in which there is never a diagnosis for nerve damage, or a prescription from Dr. Macomsen for Neurontin. Therefore, Plaintiff has not demonstrated that his neck and arm pain—the alleged serious medical need to which Plaintiff claims Defendants Fye were deliberately indifferent—had been diagnosed by a physician. Plaintiff has also failed to show that his neck pain posed a substantial risk of serious harm if left untreated. See *Wilson v. Smith*, 567 F. App'x 676, 678 (11th Cir. 2014) ( "'[T]he medical need must be one that, if left unattended, poses a substantial risk of serious harm.'") (quoting *Mann*, 588 F.3d at 1307).

Of particular note when determining the substantial risks of Plaintiff's neck pain, are Plaintiff's various other sick calls. As stated above, after his original intake appointment with P.A. Nash on December 31, 2013, Plaintiff was examined eight (8) times at Macon State. Aff. of Def. Fye, Doc. 55-3, p. 4; see also Ex. A to Aff. of Def. Fye, Doc. 55-4, pp. 1-11.

On May 15, 2014, Plaintiff complained of dandruff and athlete's foot, and was prescribed an antifungal cream and dandruff shampoo. Ex. A to Aff. of Def. Fye, Doc. 55-4, p. 10. On July 10, 2014, Plaintiff presented with mild sunburn and was encouraged to apply sunscreen before going outside. Ex. A to Aff. of Def. Fye, Doc. 55-4, p. 8. Plaintiff was also placed on an early morning profile for ninety days after his mild sunburn complaint. Ex. A to Aff. of Def. Fye, Doc. 55-4, p. 8. On August 9, 2014, Plaintiff complained of sunburn, and was prescribed Tylenol, and the nurse applied silvadene cream to the affected area. Ex. A to Aff. of Def. Fye, Doc. 55-4, p. 9. On September 8, 2014, Plaintiff complained that he needed his ears cleaned, as it was hard to hear

from both ears. Ex. A to Aff. of Def. Fye, Doc. 55-4, p. 7. Plaintiff was diagnosed with excessive earwax, and would be assessed for ear irrigation by a doctor at a later date. Ex. A to Aff. of Def. Fye, Doc. 55-4, p. 7. On October 23, 2014, Plaintiff presented with muffled sounds in his ear, and was diagnosed with possible ear pressure. Ex. A to Aff. of Def. Fye, Doc. 55-4, pp. 6. Zyrtec was prescribed to help alleviate the pressure in Plaintiff's ears. Ex. A to Aff. of Def. Fye, Doc. 55-4, p. 6. On November 12, 2014, Plaintiff again presented with hearing problems. Ex. A to Aff. of Def. Fye, Doc. 55-4, p. 5. An audiology consult was ordered, Plaintiff's ears were cleaned in the infirmary, and Plaintiff was advised to stop yelling to communicate. Ex. A to Aff. of Def. Fye, Doc. 55-4, p. 5. As of January 8, 2015, Plaintiff had a consult with an ENT pending. Ex. A to Aff. of Def. Fye, Doc. 55-4, pp. 2-3. Plaintiff never again complained or mentioned neck or nerve pain, consistent with Dr. Fye's medical opinion that Plaintiff's prescribed Neurontin was not medically necessary. Aff. of Def. Fye, Doc. 55-3, p. 3. Plaintiff's claims should be denied as to each Defendant because there is no evidence to support a finding that that he suffered from an objectively serious medical need that would pose a substantial risk of serious harm if left unattended.

    D.  <u>Defendant Fye's Deliberate Indifference</u>

        Plaintiff claims that Defendant Fye was deliberately indifferent to his serious medical need of nerve pain, in violation of the Eight Amendment, and that he suffered needless pain due to the Defendant Fye's refusal to prescribe Plaintiff Neurontin. The evidence fails to support a finding that Defendant Fye was deliberately indifferent to Plaintiff's medical needs, and indicates instead that any injury suffered by Plaintiff was not the fault of Defendant Fye, but his own. Therefore, summary judgment is appropriate on Plaintiff's Deliberate Indifference claim against Defendant Fye.

There is no evidence in the record to establish that Defendant Fye disregarded Plaintiff's complaints. Although Plaintiff was no stranger to the sick call process, during his tenure at Macon State Prison he never filed a complaint for neck pain, with the exception of Plaintiff's first examination with P.A. Nash. As discussed above, during his initial consultation with Defendant Nash, Plaintiff remembers Defendant Nash checking his blood pressure and temperature, and asking him what medications he was taking. Pl's Depo, Doc. 55-2, p. 29, 9-12. Plaintiff informed P.A. Nash that he had previously been taking Neurontin. Pl's Depo, Doc. 55-2, p. 29, 12-24. P.A. Nash determined that she needed to "discuss the need for Neurontin" with Dr. Fye and she informed Plaintiff of this. Aff. of Def. Fye, Doc. 55-3, p. 3; Aff. of Def. Nash, Doc. 55-6, p. 3. Dr. Fye did not believe there was any clinical indication that Plaintiff's prescribed Neurontin was medically necessary or should have been renewed. Aff. of Def. Fye, Doc. 55-3, p. 3. Dr. Fye advised Defendant Nash to offer Plaintiff pain medication other than Neurontin. Aff. of Def. Nash, Doc. 55-6, p. 3.

Dr. Fye testifies that she did not believe, in her professional opinion that Neurontin was necessary given Plaintiff's successful surgery, confirmed by a radiology report on post-op finding that Plaintiff's spine was in normal alignment. Doc. 55-3, p. 4; Ex. E, Pl.'s Certified Medical Records, Doc. 55-9, p. 26. In the absence of a clinical indication that Neurontin was necessary, and out of concern that "Neurontin is overprescribed and addictive in the prison context," Dr. Fye instructed Defendant Nash to offer Plaintiff alternative pain relievers. Doc. 55-3, p. 3. Plaintiff was seen by medical at least seven other times while imprisoned at Macon State Prison, and the records do not indicate that he complained of pain during any of those examinations. Doc. 55-3, p. 4.

The evidence on record does not offer any support for a finding that Dr. Fye's response to Plaintiff's medical needs was so poor as to constitute an unnecessary and wanton infliction of pain.

12

The evidence also fails to indicate that Dr. Fye disregarded a risk of serious harm by denying Plaintiff medicine for a condition that was never diagnosed. Therefore, Defendant Fye is entitled to judgment as a matter of law as to Plaintiff's Eighth Amendment claim of deliberate indifference to serious medical needs.

E. Defendant Nash's Deliberate Indifference

As noted above in Section II, C, there is no evidence in the record to show that Plaintiff suffered from an objectively serious medical condition. On that ground alone, Defendant Nash is entitled to judgment as a matter of law.

Moreover, the record is devoid of any evidence that Defendant Nash was deliberately indifferent to Plaintiff's medical needs. The record establishes that Defendant Nash examined Plaintiff's upon arrival at Macon State Prison. At this meeting, Plaintiff remembers Defendant Nash checking his blood pressure and temperature and asking him what medications he was taking. Pl's Depo, Doc. 55-2, p. 29, 9-12. When Plaintiff told Defendant Nash that he was prescribed Neurontin, Defendant Nash told Plaintiff that she could not give him Neurontin because the original prescription was not in his file, but stated that she would discuss the prescription with Dr. Fye, the only person at Macon State who could prescribe Neurontin. Pl's Depo, Doc. 55-2, p. 29, 12-24; Aff. of Def. Fye, Doc. 55-3, p. 3.

After reviewing Plaintiff's medical records Dr. Fye advised Defendant Nash to offer Plaintiff pain medication other than Neurontin. Aff. of Def. Nash, Doc. 55-6, p. 3. Defendant Nash offered to provide Plaintiff with other types of medication and treatment that were just as effective in alleviating pain as Neurontin. Aff. of Def. Nash, Doc. 55-6, p. 3. Plaintiff refused pain medication and treatment, insisting that he only wanted Neurontin. Aff. of Def. Nash, Doc. 55-6, p. 4.

After this initial examination, Plaintiff states that he was never examined again by Defendant Nash. Pl's Depo, Doc. 55-2, p. 30, 9-25. That examination was also the last time Plaintiff complained of nerve pain during a medical examination. When Defendant Nash reported Plaintiff's request for Neurontin to Dr. Fye, Dr. Fye refused to prescribe it. There is nothing in the record to indicate that Defendant Nash had the authority to disregard a doctor's order.

These facts fail to support a finding that Defendant Nash disregarded a risk of serious harm. There is no evidence that Plaintiff suffered from a serious medical condition or that Defendant Nash disregarded any medical needs. Accordingly, Defendant Nash is entitled to judgment as a matter of law.

F. <u>Defendant Smith's Deliberate Indifference</u>

Plaintiff, in his Complaint, asserts that Defendant Smith, the director of nurses at Macon State Prison, did not respond to his request to be transferred to an outside doctor or to Augusta State Medical Prison. Doc. 1, p. 7. Defendant Smith has presented evidence to show that there is no genuine issue of material fact and that judgment should be issued as a matter of law as to Plaintiff's claims of deliberate indifference against her. The evidence presented reveals that in early 2014, Defendant Smith received a letter from Plaintiff, requesting access to his medical file "so I can add to my lawsuit for medical negligence, deliberate indifference, and cruel and unusual punishment." Aff. of Def. Smith, Doc. 55-7, p. 3; Doc. 55-8. Smith responded to Plaintiff's request by stating: "we are awaiting a response as to how to handle your request since you are in [isolation/segregation]. Once we get a response you will be notified." Aff. of Def. Smith, Doc. 55-7, p. 3. Defendant Smith spoke to Dr. Fye about Plaintiff's request for Neurontin, and Dr. Fye told Defendant Smith that she did not believe it was medically necessary. Aff. of Def. Smith, Doc. 55-7, p. 3. This is the only interaction Defendant Smith had with Plaintiff, she never

14

examined him. Aff. of Def. Smith, Doc. 55-7, p. 3.

These facts do not support a finding of deliberate indifference that violates the Eighth Amendment. As noted above, the evidence does not indicate that Plaintiff had an objectively serious medical need. As Defendant Smith spoke to Dr. Fye about Plaintiff's request for Neurontin, and found that Dr. Fye did not think the pain medication was necessary, she also did not disregard Plaintiff's medical need. There is no evidence that Defendant Smith had authority to disregard a doctor's orders.

Finally, as Plaintiff has failed to demonstrate that any Defendant violated his Eighth Amendment rights, the Court need not address the second prong of the qualified immunity analysis.

## CONCLUSION

Because Plaintiff fails to demonstrate a genuine issue of material fact with regard to his claims of deliberate indifference against the Defendants, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 55) be **GRANTED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions

if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, the 7th day of January, 2016.

s/ Charles H. Weigle  
Charles H. Weigle  
United States Magistrate Judge
